## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:    1:18-CV-_____

| | |
|---|---|
| STUART SCHAEFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALLSTATE FIRE AND CASUALTY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

### CIVIL COMPLAINT AND JURY DEMAND

---

The Plaintiff, Stuart Schaefer, by and through his undersigned attorneys, ZANER HARDEN LAW, LLP, hereby submits the following Civil Complaint and Jury Demand and asserts:

### JURISDICTION AND VENUE

1.      At all times relevant to this action, Plaintiff Stuart Schaefer (hereinafter "Plaintiff") resided in Colorado.

2.      Upon information and belief, at all times relevant to this action, Defendant Allstate Fire and Casualty Insurance Company (hereinafter, "Defendant") was and is an Illinois corporation licensed to do business in the State of Colorado.

3.      At all relevant times, Defendant purposefully availed itself of the privilege of conducting business in the State of Colorado.

4.      Defendant maintains a registered agent for service in Denver Colorado at the Division of Insurance, 1560 Broadway, Suite 850, Denver, Colorado 80202.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is a civil action in which the parties are citizens of different states.

6.      Venue is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) as this is a District in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

7.      On or about October 8, 2016, Plaintiff and Mark Ernster (hereinafter "Ernster") were involved in a motor vehicle collision at or near the intersection of Colorado Highway 85 and Happy Canyon Road in Douglas County, Colorado.

8.      Plaintiff was driving a 2006 Nissan Altima (hereinafter "the Nissan") and was traveling southwest on Happy Canyon Road approaching the intersection of Happy Canyon Road and Colorado Highway 85.

9.      Ernster was driving a 1996 Dodge Ram (hereinafter "the Dodge") and was traveling northwest on Colorado Highway 85 approaching a red light the intersection of Happy Canyon Road and Colorado Highway 85.

10.     With the green light and right-of-way, Plaintiff began turning his Nissan left from Happy Canyon Road onto Colorado Highway 85 in order to travel southeast on Colorado Highway 85.

11.     Although he had a red light and did not have the right-of-way at the intersection, Ernster failed to stop for the red light at the intersection of Happy Canyon Road and Colorado Highway 85 as Plaintiff was making his left-hand turn with the right-of-way.

12.     Ernster failed to maintain a proper lookout when, after failing to stop for the red light at the intersection, his Dodge violently collided with the Nissan, causing severe damage to both vehicles.

13.     After violently colliding with the Nissan, the Nissan was pushed backwards and rotated clockwise, eventually coming to rest facing north in the intersection.

14.     Because he was traveling at such a high rate of speed, after failing to stop at the red light and violently colliding with Plaintiff's Nisan, the Dodge travelled to the left through the intersection and collided head-on with a 1996 Ford F-250 (hereinafter "the Ford") being operated by Ernest Renz (hereinafter "Renz").

15.     After being struck by Ernster's Dodge, the Ford travelled backwards and rotated clockwise, eventually coming to rest facing south partially in the southbound left turn lane on Colorado Highway 85.

16.     After violently colliding with the Nissan and the Ford, Ernster's Dodge eventually came to rest partially off the west side of Colorado Highway 85 facing westbound.

17.     As a result of these impacts, the load on the Dodge's trailer detached from the trailer and collided with a toolbox on the trailer, which then impacted the rear of the Dodge.

18.     Officer Matthew Normandin conducted a thorough investigation of the crash, found Ernster to be at fault, and issued Ernster a citation for Careless Driving Causing Bodily Injury.

19.    When Ernster drove the Dodge in such a manner as to collide with the Nissan, he drove in a careless and imprudent manner failing to take into account the safety of others, particularly Plaintiff.

20.    Plaintiff suffered physical injuries as a result of the aforementioned collision and underwent medical treatment including being placed in a cervical collar and immediately transported to the trauma unit at Sky Ridge Medical Center.

21.    Plaintiff was not comparatively negligent at the time of the collision.

22.    Plaintiff did not cause the aforementioned collision.

23.    As a direct and proximate result of Ernster's negligence, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to, past and future medical expenses in the amount of at least $41,179.50 and other economic losses.

24.    As a direct and proximate result of Ernster's negligence, Plaintiff suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress, and impairment of quality of life.

25.    As a direct and proximate result of Ernster's negligence, Plaintiff has suffered physical impairment.

26.    Upon information and belief, Ernster was an underinsured motorist at the time of the aforementioned collision, maintaining limited insurance coverage less than was necessary to compensate Plaintiff for his injuries and damages caused by Ernster's negligence.

27.    At the time of the incident, Plaintiff was insured by Defendant for Underinsured Motorist Benefits (hereinafter "UIM Benefits") in the amount of at least $50,000.00 under policy number 987 227 088 (hereinafter the "Policy").

28.    Defendant received premium payments from Plaintiff over substantial time in exchange for insurance coverage under the Policy, including UIM Benefits.

29.    As an insured for UIM Benefits under the Policy, Plaintiff is entitled to recover UIM Benefits directly from his insurance company, Defendant, in the case that he was injured by an underinsured and negligent driver, such as Ernster.

30.    After reviewing Plaintiff' medical records and medical bills, as well as other information regarding Plaintiff' injuries and damages, Ernster's insurance carrier, Safeco Insurance, determined that Plaintiff' damages were valued at more than Ernster's insurance limits of $25,000.00, and thereafter offered those insurance limits to settle Plaintiff's claim.

31.    In August 2017, after first obtaining permission from Defendant to settle the claim, Plaintiff settled his bodily injury claim for Ernster's policy limits of $25,000.00 with Safeco Insurance.

32.     On August 21, 2017, after settling his bodily injury claim for Ernster's policy limits and given that his claim was worth more than the insurance limits of Ernster's bodily injury policy, Plaintiff requested that Defendant review his medical treatment records and other documentation and tender Plaintiff's full UIM Benefits.

33.     When Plaintiff made his request for UIM Benefits under the Policy, Plaintiff provided extensive information about his injuries, damages, and losses including, but not limited to, medical records and medical bills.

34.     In his request for UIM Benefits, Plaintiff also explained the myriad ways the crash with Ernster affected his life, including the excruciating physical pain he endured, the many activities in which he was unable to participate, the scar he sustained as a result of the crash, and the significant time he missed from his profession as a personal trainer.

35.     Plaintiff also described the anxiety, nightmares, fatigue, and irritability he sustained as a result of the crash with Ernster.

36.     Plaintiff further told Defendant about the devastating effects the collision had on his personal finances.

37.     Plaintiff requested a response from Defendant regarding his request for UIM Benefits within twenty-one (21) days.

38.     On September 28, 2017, Defendant responded to Plaintiff's request but failed to present any offer because "it [was Defendant's] position that [Plaintiff] has been fully compensated for their injury claim by the at fault insurance company."

39.     Defendant did so even though Plaintiff incurred more than $41,000 in past medical bills alone and Ernster only carried $25,000.00, the state minimum, in bodily injury insurance coverage.

40.     Defendant failed to offer an explanation for its offer in writing and instead stated over the phone that it was only considering $12,163.00 in Plaintiff's medical bills, even though Plaintiff incurred such bills in the amount of $41,179.50.

41.     On October 13, 2017, Defendant again confirmed that its insured, Plaintiff, had been fully compensated by the $25,000.00 settlement with Ernster's insurer, Safeco.

42.     On November 10, 2017, Plaintiff responded to Defendant's failure to offer any UIM Benefits and reminded Defendant that the underlying collision was "so severe that it is a near-miracle that [Plaintiff] walked away from the incident without catastrophic orthopedic injuries, let alone, his life."

43.     Plaintiff reminded Defendant that as a personal trainer, his very well-being, livelihood, and ability to earn an income was significantly affected as a result of "the injuries [he] sustained in this collision."

44.     Plaintiff stated that "it seems his own insurance company is now seeking to penalize their insured for recovering in a relatively short fashion via conservative care."

45.     Plaintiff wrote that it was illogical that Defendant, "an insurance company with billions of dollars in annual profit," would take a position on the claim that did not even cover Plaintiff's medical bills.

46.     Plaintiff also questioned Defendant's evaluation of his noneconomic damages, as after "this grisly crash," Plaintiff sustained significant noneconomic damages the day of the crash and "during the months of treatment that followed."

47.     Plaintiff also sought clarification as to why Defendant failed to "put its claims-related determinations, conclusions, and reasoning in writing" as required by Colorado law and requested a detailed, written breakdown of Defendant's position as well as its apportionment of Plaintiff's damages.

48.     In hoping that this was merely a clerical error within Defendant's claims-handling, Plaintiff reminded that the very reason he purchased UIM coverage with Defendant was to protect himself in case he was ever involved in a catastrophic crash with an underinsured driver such as Ernster.

49.     In response, on November 16, 2017, Defendant stated in writing that it was only considering $12,163 in "reasonable and customary medical bills" and $6,000 in "general pain and suffering."

50.     On December 5, 2017, Plaintiff sought additional clarification on "the drastic reduction Allstate has made regarding its insured's charged medical bills" and its unreasonably low amount apportioned to Plaintiff's noneconomic damages.

51.     Plaintiff wondered why Defendant in particular reduced the bills he received from the trauma center at Sky Ridge, as Plaintiff "had no control over where paramedics decided to take him after the crash, what treatment he was given, and most importantly, what those treatment providers charged him."

52.     Plaintiff also stated that Defendant's apportionment of $6,000 in noneconomic damages was "unreasonable" because "the injuries he sustained in this crash prevented him from living his life in the same way he did had this crash not occurred and affected his ability to work."

53.     As a result, Plaintiff "respectfully" asked Defendant to "reevaluate its breakdown related to this claim."

54.     On December 11, 2017, a new adjuster, Raul Sanchez, informed Plaintiff that he had taken over the handling of Plaintiff's UIM claim and "re-evaluated Mr. Schaefer's UIMBI claim to be $8,118.71."

55.     Defendant's "re-evaluation," however, still failed to account for even Plaintiff's total charged medical bills.

56.     Additionally, Defendant failed to provide a detailed break-down, either in writing or over the phone, for its "re-evaluated" offer.

57.     Defendant has unreasonably and in bad faith failed to offer an adequate and sufficient amount to settle Plaintiff's claim for UIM Benefits under the Policy.

58.     Defendant has failed to fairly evaluate or pay Plaintiff's claims for UIM Benefits under the Policy.

59.     Defendant acted unreasonably and with knowledge of, or reckless disregard for, its unreasonableness.

## FIRST CLAIM FOR RELIEF
### Underinsured Motorist Benefits

60.     Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 59 of this Complaint, as if set forth *verbatim*.

61.     At the time of the aforementioned collision, Plaintiff qualified as an "insured" for purposes of a contract of insurance, the Policy, with Defendant.

62.     The Policy included a provision for uninsured/underinsured motorist bodily injury coverage, which provides that Defendant will pay for damages and bodily injuries sustained by Plaintiff if injured by a negligent uninsured or underinsured driver.

63.     Ernster was a negligent underinsured driver for purposes of UIM Benefits owed to Plaintiff under the terms of the applicable policy.

64.     Plaintiff has satisfied all conditions precedent under the Policy and is eligible to recover UIM Benefits under the Policy.

65.     Defendant is liable for Plaintiff' injuries and damages, as described above, caused by the underinsured driver in accordance with the provisions of C.R.S. § 10-4-609.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

66.     Plaintiff incorporates herein by this reference, the allegations contained in Paragraphs 1 through 65 of this Complaint, as if set forth *verbatim*.

67.     The Policy was in full force and effect on the date and time that Plaintiff suffered injuries in the aforementioned collision.

68.     Defendant unreasonably failed to pay the Plaintiff's claim that was made pursuant to the applicable Policy.

69.     Defendant breached its contractual duty owed to Plaintiff.

70.     Plaintiff is entitled to damages allowed by law for breach of contract against Defendant.

### THIRD CLAIM FOR RELIEF
### Unreasonable Delay/Denial of a Claim for Benefits
### Pursuant to C.R.S. §§ 10-3-1115-1116

71.     Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 70 of this Complaint as if set forth *verbatim*.

72.     Defendant's delay and failure to settle Plaintiff's claim for benefits pursuant to the UIM coverage under the Policy was and is unreasonable and in violation of C.R.S. §§ 10-3-1115 & 10-3-1116.

73.     Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover the covered benefit plus twice the covered benefit as well as attorney fees and costs from Defendant for the unreasonable delay and denial of his claim for underinsured motorist benefits.

### FOURTH CLAIM FOR RELIEF
### Bad Faith

74.     Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 73 of this Complaint as if set forth *verbatim*.

75.     Defendant owed Plaintiff a duty of good faith and fair dealing.

76.     Defendant's actions as set forth above were unreasonable and Defendant knew its actions were unreasonable and/or recklessly disregarded the fact that its actions were unreasonable.

77.     Defendant breached its duty of good faith and fair dealing and its covenant to act in good faith with regard to Plaintiff.

78.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer economic and non-economic damages as described above.

**WHEREFORE,** the Plaintiff, Stuart Schaefer, prays for judgment against the Defendant, Allstate Fire and Casualty Insurance Company, in an amount to be determined by the trier of fact for his losses as set forth above and for costs, expert witness fees, filing fees, attorney fees, pre- and post-judgment interest, and such other further relief as the Court may deem appropriate, just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated this 12th of January, 2018.     Respectfully submitted,

                                       ZANER HARDEN LAW, LLP

                                       s/ Elliot Singer
                                       **Elliot Singer**
                                       Zaner Harden Law, LLP
                                       1610 Wynkoop St., Suite 110
                                       Denver, CO 80202
                                       T:  (303) 563-5351
                                       F:  (303) 563-5351
                                       E-Mail:  es@zanerhardenlaw.com
                                       Attorney for Plaintiff


Plaintiff' Address:

4103 Brilliance Drive
Castle Rock, CO 80109